UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-22496-BLOOM/Elfenbein

CIARA DORMEUS,

      Plaintiff,

v.

MIAMI-DADE COUNTY; and
LUIS VASQUEZ, Deputy Sheriff,
Miami-Dade County, in his individual
capacity; and
BRYAN PORTILLO, Deputy Sheriff,
Miami-Dade County, in his individual
capacity; and
PABLO BUDUEN, Deputy Sheriff,
Miami-Dade County, in his individual
capacity; and
DORAIN HEYLIGER, Deputy Sheriff,
Miami-Dade County, in his individual
capacity,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Miami-Dade County, Luis Vasquez, Bryan Portillo, Pablo Buduen, and Dorain Heyliger's (collectively "Defendants") Motion to Dismiss, ECF Nos. [13]. Plaintiff Ciara Dormeus ("Plaintiff") filed a Response to Defendants' Motion ("Response"), ECF No. [17], to which Defendants filed a Reply, ECF No. [22]. For the reasons that follow, the Defendants' Motion is granted.

## I.   FACTUAL BACKGROUND

This case arises out of an altercation and arrest that occurred at Silk Press Express beauty salon ("the Salon"). ECF No. [1]. According to the Complaint, on June 3, 2023, Plaintiff visited

the Salon to receive beauty care services; however, at the end of her appointment, Plaintiff attempted to challenge the cost of the services. *Id.* at ¶ 11. While Plaintiff eventually left the Salon without incident, she later returned "to clarify the discrepancies in charges." *Id.* at ¶ 12. The dispute between Plaintiff and the Salon staff eventually broke out into an "argument." *Id.* During the argument, Plaintiff was on a FaceTime call with an unidentified third party. At some point during the argument, "Renee Peterson, an off-duty captain with the Broward County Sheriff's Office," and a patron of the Salon, approached Plaintiff to let her know that "she did not want anyone [Plaintiff] was speaking to on FaceTime to see her." *Id.* Peterson then "escalated matters by initiating contact and physically restraining [Plaintiff], pushing her against a wall and pinning her there." *Id.* at ¶ 14. During the altercation, someone else at the Salon "called 911, and deputies from the Miami-Dade Sheriff's Office were dispatched." *Id.* at ¶ 15.

Deputies Dorain Heyliger and Pablo Buduen eventually arrived on the scene, and after assessing the situation, became concerned that Plaintiff "might have been the victim, rather than the aggressor." *Id.* at ¶ 16. Once Heyliger completed his investigation, he "determined that Ms. Peterson was the primary aggressor," and therefore, he "did not believe he had probable cause to arrest [Plaintiff]." *Id.* at ¶¶ 17, 19.  Given his concerns about the lack of probable cause, Heyliger sought advice from Sergeant Bryan Portillo as to whether an arrest was appropriate. *Id.* at ¶ 19. "Portillo contacted [Lieutenant Luis] Vasquez, who was not present at the scene," and informed Vasquez that "Peterson was a captain at the Broward Sheriff's Office." *Id.* at ¶ 10. Portillo also conveyed to Vasquez Deputy Heyliger's concerns about the lack of probable cause, along with "the other information gathered from the investigation." *Id.* at ¶ 20. Notwithstanding Heyliger's concerns, and the fact that "[n]o independent witness corroborated Ms. Peterson's version of

2

events," "Vasquez instructed [Portillo]' to 'make the arrest,'" and said, "whatever [Peterson] is telling you, we are going by that." *Id.* at ¶¶ 18, 21.

After the call, Portillo informed the other officers that Vasquez had directed them to arrest Plaintiff. Although Heyliger and Buduen initially objected, Heyliger eventually complied with Vasquez's order and carried out the arrest without probable cause while Buduen and Portillo "stood by and allowed [the arrest] to happen." *Id.* at ¶¶ 23, 26, 27. Plaintiff subsequently "spent approximately five days in the Miami-Dade County Jail before she could post bond." *Id.* at ¶ 29. An Information was filed against Plaintiff on August 2, 2023, but on September 6, 2024, the criminal case against Plaintiff was dismissed. *See id.* at ¶¶ 31-32.

As a result of her arrest and subsequent prosecution, Plaintiff brought the following claims against Defendants: (1) False Arrest and False Imprisonment under 42 U.S.C. § 1983 against Defendants Vasquez and Heyliger; (2) Malicious Prosecution under 42 U.S.C. § 1983 against Defendants Vasquez and Heyliger; (3) Failure to Intervene under 42 U.S.C. § 1983 against Defendants Portillo and Buduen; (4) False Arrest under Florida law against Defendant Miami-Dade County; (5) False Imprisonment under Florida law against Defendant Miami-Dade County; and (6) Malicious Prosecution under Florida law against Defendants Vasquez, Heyliger, and Miami-Dade County. ECF No. *See id.*

Defendants now seek to dismiss the Complaint because they contend the officers are entitled to qualified immunity on Counts I, II, and III and because the existence of probable cause bars the remaining three state law claims. ECF No. [13]. Plaintiff contends that dismissal is inappropriate because (1) the allegations in the Complaint are sufficient to establish each of her claims; (2) the Defendants improperly rely on video footage; (3) the arrest lacked probable cause;

and (4) the qualified immunity defense is premature at this juncture. *See* ECF No. [17]. The matter being fully briefed is now ripe for consideration.

## II. LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to

accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the court is generally limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352. However, pursuant to the incorporation by reference doctrine, "a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'" *Swinford v. Santos*, 121 F. 4th 179, 187 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)).

## III.   DISCUSSION

### A.  Section 1983 Claims

Defendants argue that the doctrine of qualified immunity precludes Plaintiff from establishing a § 1983 claim against any of the officers. Defendants point out that qualified immunity is a two-step analysis. In step one, Defendants must establish that the officers' "acts were '(1) undertaken pursuant to the performance of [their] duties, and (2) within the scope of [their] authority.'" ECF No. [13] at 5 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). According to Defendants, there is no dispute that the officers were acting within the scope of their employment, and, as such, Defendants have satisfied their initial burden. *Id.* Therefore, the Court may proceed to step two, where Plaintiff must establish that (1) "each Defendant violated her rights under the Fourth Amendment," and (2) the right was "clearly established at the time the

incidents occurred." *Id.* at 5- 6. Defendants maintain that Plaintiff has failed to satisfy her burden as to all three § 1983 claims.

Turning first to the false arrest claim,[1] Defendants explain that "the existence of probable cause at the time of the arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Id.* at 7 (quoting *Brown v. Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)). Therefore, because Defendants contend they had probable cause to arrest Plaintiff for battery based on: "(1) Peterson's account that [Plaintiff] pushed her;" (2) "four witnesses who corroborated the sequence of events that Peterson recounted;" and (3) the officers personally observing Plaintiff pushing Peterson when they arrived on the scene, Defendants maintain that there is no basis for a § 1983 claim for false arrest. *Id.* at 7-8.

Moreover, even if the officers did not have probable cause to arrest Plaintiff, Defendants point out that they would still be entitled to qualified immunity if they at least possessed "arguable probable cause" for the arrest. *See id.* at 6. Given the fact that there is no case establishing that police officers do not have probable cause to arrest a suspect where the victim describes in detail how the crime occurred, four witnesses corroborate the victim's narrative, and officers personally observed a battery, Defendants argue that there was at least arguable probable cause for the arrest. *Id.* at 10.

Regarding the malicious prosecution claim, Defendants contend that to sustain such a claim under § 1983, the plaintiff must be arrested pursuant to legal process. Therefore, because Plaintiff was arrested without a warrant and, warrantless arrests do not constitute legal process, Defendants maintain that no constitutional violation occurred that would support a § 1983 malicious

---

[1] Because the elements of false arrest and false imprisonment are the same, the Court will refer to the § 1983 claim in Count I as the false arrest claim. *See e.g., Willingham v. City of Orlando*, 929 So. 2d 43, 49-50 (Fla. 5th DCA 2006) ("The cases seem to treat false imprisonment and false arrest as essentially the same tort when the issue involves an arrest and detention by a law enforcement officer.").

prosecution claim. *Id.* at 10-11. Furthermore, even if Plaintiff was indeed arrested pursuant to legal process, a malicious prosecution claim may only be brought against a defendant if they made a decision to prosecute or "acted 'in such a way as to improperly influence the decision by the State Attorney.'" *Id.* at 11 (quoting *Eubanks v. Gerwen*, 40 F.3d 1157, 1161 (11th Cir. 1994)). Accordingly, because there are no allegations that there were any legal errors in the prosecution or that the officers played any substantive role in the prosecution, Defendants argue Plaintiff has failed to state a constitutional violation necessary to establish her § 1983 malicious prosecution claim. Furthermore, just like for a false arrest claim, Plaintiff must establish that Defendants arrested her without probable cause. Therefore, because there was probable cause to arrest Plaintiff for battery, her § 1983 malicious prosecution claim fails as well. *Id.* at 11.

Finally, because Plaintiff has failed to establish that a Fourth Amendment violation occurred, Defendants argue that Plaintiff's failure to intervene claim against Sergeant Portillo and Officer Buduen must also be dismissed. According to Defendants, to sustain a failure to intervene claim under § 1983, there must be an underlying constitutional violation. Because the existence of probable cause forecloses Plaintiff's § 1983 claim for false arrest and malicious prosecution, Defendants contend her failure to intervene claim must therefore fail as well. *Id.* at 12.

Plaintiff responds first by challenging the body-worn camera ("BWC") video evidence and testimony relied upon in support of Defendants' Motion. Plaintiff argues that rather than "addressing the factual allegations in the Complaint, the Defendants depend on their own interpretation of specific BWC videos." ECF No. [17] at 2. According to Plaintiff, considering the BWC videos is inappropriate at the motion to dismiss stage, particularly where the Complaint "does not mention BWC footage and [the content of the videos is] not central to Plaintiff's claims." *Id.* at 4. Plaintiff contends, however, even if the Court were to consider the BWC videos, the

evidence would still not warrant a dismissal because even though the videos show Plaintiff committing a battery, Deputy Heyliger's sworn testimony confirms that Plaintiff was not the first aggressor. *Id.* at 5.

Plaintiff further maintains that she has adequately alleged constitutional violations necessary to sustain her § 1983 claims. The Complaint alleges that Plaintiff was arrested without probable cause and that Deputy Heyliger concluded that Peterson, not Plaintiff, was the first aggressor. Nevertheless, the officers still held Plaintiff in jail for five days. According to Plaintiff, assuming those allegations are true, "they indicate a violation of her Fourth Amendment rights. *Id.* at 5. Accordingly, because Plaintiff has properly alleged a constitutional violation, she contends that it would be premature to conduct a qualified immunity analysis.

"Title 42 U.S.C. § 1983 creates a cause of action which allows an individual whose federal constitutional or statutory rights have been violated to seek damages from the state actor who caused the violation" in federal court. *Mercer v. Youghn*, No. 7:24-CV-95–WLS, 2025 WL 2807316, at *9 (M.D. Ga. Sept. 30, 2025); *see Gervin v. Florence*, 139 F.4th 1236, 1246 (11th Cir. 2025). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–257 (1978)). Therefore, to state a § 1983 claim, a plaintiff must show "that the conduct complained of (1) was committed by a person acting under color of state law, and (2) that conduct deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Mercer*, 2025 WL 2807316, at *9.

One defense a state official may assert to a § 1983 action is qualified immunity. *See Rodriguez v. Gomez*, 645 F. Supp. 3d 1343, 1347 (S.D. Fla. 2022) ("Qualified immunity may be

raised in a motion to dismiss."); *Madison v. Colquitt Cnty. Sch. Dist.*, Case No.: 7:23-CV-00031, 2025 WL 1267198, at \*2 (M.D. Ga. May 1, 2025). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Here, Plaintiff does not dispute that the officers were acting within their discretionary capacities. *See generally* ECF No. [17]. Accordingly, Defendants have carried their initial burden. "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194).

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff meets her burden on rebutting a qualified immunity defense: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the

plaintiff fails to establish either." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

However, before the Court decides whether Plaintiff has adequately rebutted the officers' qualified immunity defense, the Court must first decide whether Plaintiff is correct that it is inappropriate for the Court to consider any evidence outside of the pleadings—specifically, the BWC videos. Defendants provided the Court with three conventionally filed videos captured on the officers' body-worn cameras. *See* ECF No. [11]. The video most relevant for the purposes of this analysis is the video titled BWC1-Axon_Body_3_Video_2023-06-03_1554_X60A73976. The video captures the officers arriving on the scene, walking into the salon and approaching Plaintiff and Peterson. The video also shows Peterson's arm on Plaintiff and then Plaintiff aggressively shoving Peterson while yelling various profanities and telling Peterson to get off of her. The video goes on to show Plaintiff being arrested and removed from the salon and then shows Plaintiff telling her version of events to the officers. The other two videos also show Plaintiff's arrest as well as interviews of various witnesses.  After careful consideration, the Court finds that it may properly consider the BWC video evidence submitted by Defendants in evaluating the instant Motion to Dismiss.

"Under the incorporation-by-reference doctrine, a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'" *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)).[2] Notwithstanding Plaintiff's

---

[2] In *Swinford*, the Eleventh Circuit made clear that the incorporation by reference doctrine does not only apply to written documents but to video evidence, including police body camera footage. *See Swinford*, 121 F.4th at 187.

argument to the contrary,[3] the BWC videos are certainly central to the case as they capture the

Plaintiff committing a battery,[4] the moments leading up to Plaintiff's arrest, and the arrest itself,

which form the basis of her false arrest, false imprisonment, malicious prosecution, and failure to

intervene claims. ECF No. [11]; *see Lee v. Gee*, 722 F. Supp. 3d 1372, 1376 (M.D. Ga. 2024) ("The

video evidence is central to Plaintiff's claim, as it documents Plaintiff's arrest in its entirety.").

Moreover, Plaintiff does not challenge the authenticity of the videos, nor does she dispute

that the videos in question accurately capture her committing a battery against Peterson. *See* ECF

No. [17] at 4. Plaintiff's only argument is that the videos offered by Defendants are incomplete as

they fail to capture the beginning of the altercation between Plaintiff and Peterson, which would

further show that Peterson, not Plaintiff, was the initial and primary aggressor. However, as the

Eleventh Circuit explained in *Swinford*, the body-camera footage need not be "complete" in the

sense that it captures all the events leading up to arrest so long as the videos show the authentic,

unedited footage of the event underlying the plaintiff's claims. *See Swinford*, 121 F.4th at 188; *see*

*also Johnson*, 107 F.4th at 1301. Accordingly, the Court finds it proper to consider the BWC videos

of Plaintiff's actions and her arrest, keeping in mind that it must still "construe all ambiguities in

the video footage and in the pleadings in Plaintiff's favor. *Baker v. City of Madison, Alabama*, 67

F.4th 1268, 1277–78 (11th Cir. 2023) (citing *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623

F.3d 1371, 1379 (11th Cir. 2010)). "But where [the] video is clear and obviously contradicts the

plaintiff's alleged facts, [the Court will] accept the video's depiction instead of the complaint's

---

[3] Plaintiff argues that videos are not central to her claims because "[t]he core issue relates to orders made off-camera" by Vasquez. ECF No. [17] at 4.

[4] "In Florida, a battery occurs when a 'person actually and intentionally touches or strikes another person against the will of the other.'" *Wolk v. Seminole Ctny.*, 276 F. App'x 898 (11th Cir. 2008) (quoting Fla. Stat. § 784.03(1)(a)(1)). "[A]ny intentional touching, no matter how slight, is sufficient to constitute a simple battery." *State v. Hearns*, 961 So. 2d 211, 218-19 (Fla. 2007).

account, [ ] and view the facts in the light depicted by the video." *Id.* (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010); *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)).

With the video evidence issues resolved, the Court must decide whether the officers' conduct violated one of Plaintiff's constitutional rights and whether that right was clearly established. To establish a constitutional violation and ultimately sustain a claim for false arrest or malicious prosecution pursuant to § 1983, a plaintiff must show that she was arrested without probable cause. *See Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022); *Jones v. Brown*, 649 F. App'x 889, 890 (11th Cir. 2016) (stating that a claim for false arrest under § 1983 "arises when an arrest occurs without a warrant and without probable cause") (citing *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)); *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012); *see Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023) (explaining that a criminal proceeding must be instituted without probable cause in order to sustain a malicious prosecution claim). Based on the BWC videos, the officers at the scene had probable cause to arrest Plaintiff for battery. Indeed, Plaintiff does not genuinely dispute that the BWC videos show her aggressively shoving Peterson as the officers arrive on the scene. *See* ECF Nos. [11], [17] at 4.

While Plaintiff argues that Peterson was the initial aggressor, that fact does not alter the probable cause analysis. Presumably, Plaintiff repeatedly asserts that Peterson was the initial and primary aggressor to show that Plaintiff's actions constituted self-defense and, therefore, Plaintiff's actions were reasonable and proportional under the circumstances. The problem with Plaintiff's argument, however, is that the existence of a valid affirmative defense does not undermine the existence of probable cause. *See Davis v. City of Apopka*, 78 F.4th 1326, 1345 n.4 (11th Cir. 2023) ("A claim of self-defense does not establish innocence, and it does not negate

probable cause. [ ] Officers are not required to forego making an arrest until after they have investigated and rule out any explanation a suspect offers them."); *Paez v Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (noting that "an affirmative defense does not necessarily vitiate probable cause") (citing *Manners v. Cannella*, 891 F.3d 959, 971-72 (11th Cir. 2019)); *State v. Riehl*, 504 So. 2d 798, 800 (Fla. 2d DCA 1987) ("In order to establish the probable cause necessary to make a valid arrest, however, it is not necessary to eliminate all possible defenses."). "Moreover, "police officers aren't lawyers; we do not expect them to resolve legal questions or to weigh the viability of most affirmative defenses" before an arrest is made. *Paez*, 915 F.3d at 1286 (citing *Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th Cir. 1991)). Therefore, even accepting Plaintiff's allegation that Peterson initiated the altercation and physically restrained her, that does not alter the Court's conclusion that the officers had probable cause to arrest Plaintiff based on the battery they observed Plaintiff commit at the Salon.[5]

The Court is also unpersuaded that Plaintiff has successfully rebutted the video evidence establishing probable cause simply by alleging that Heyliger "did not believe he had probable cause to arrest" Plaintiff and because Vasquez later testified that he would not have ordered Plaintiff's arrest if he had heard Heyliger's objections or had been provided with the results of Heyliger's investigation. The Eleventh Circuit has made clear that "probable cause will only be vitiated if the exculpatory evidence 'did not merely make it less likely probable cause existed but '*obviously and irrefutably* established that it didn't exist.'" *Scott v. City of Miami*, 139 F.4th 1267, 1274 (11th Cir. 2025) (emphasis in the original) (quoting *Davis*, 78 F.4th at 1343). Here, the

---

[5] Even if Plaintiff was not charged with the battery that the officers observed when they arrived on the scene, that battery would still support a finding of probable cause. *Paez*, 915 F.3d at 1286 (citing *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.")).

officers observed first-hand that Plaintiff had committed a battery against Peterson and there was

not clear and irrefutable evidence that Peterson had initiated the conflict or that Plaintiff's conduct

was reasonable and justified under the circumstances. Indeed, Plaintiff fails to point to any

evidence Deputy Heyliger would have examined that would have "obviously and irrefutably"

persuaded him that probable cause did not exist. Therefore, while Heyliger may have had concerns

about arresting Plaintiff and even initially objected to the arrest, the Complaint fails to establish

that Heyliger had obvious and irrefutable exculpatory evidence at the time of the arrest such that

there was no legitimate basis for a finding of probable cause.[6] *See Paez*, 915 F.3d at 1286 ("So

long as it is reasonable to conclude from the body of evidence as a whole that a crime was

committed, the presence of some conflicting evidence or a possible defense will not vitiate a

finding of probable cause."). Therefore, because the videos establish there was probable cause

necessary for Plaintiff's arrest and subsequent prosecution, Plaintiff's § 1983 claims for false arrest

and malicious prosecution are dismissed.[7]

Turning to Plaintiff's § 1983 failure to intervene claim, while "[a] law enforcement officer

can be directly liable under § 1983 when he 'fails or refuses to intervene when a constitutional

violation . . . takes place in his presence[,]'" such a claim is "'wholly dependent' on an underlying

---

[6] "We repeat that a finding of probable cause does not require a preponderance of the evidence; probable cause does not require an arresting officer to resolve conflicting evidence in a manner favorable to a suspect; the concept of probable cause is a flexible and fluid one that looks to the totality of the available evidence; and these decisions are often made quickly by law enforcement officers based on what has just happened on the ground, and not later in the sterile confines of a courtroom or a law office." *Scott*, 139 F.4th 1267, 1277 n.4.

[7] The Court also notes that Plaintiff's § 1983 malicious prosecution claim must be dismissed because she was not arrested pursuant to legal process, given that she was arrested without a warrant. *See Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025) (explaining that a plaintiff must establish that the seizure was pursuant to legal process in order to establish a § 1983 malicious prosecution claim); *See Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (explaining that a warrantless arrest is an arrest without legal process).

constitutional violation." *Ford v. Smitherman*, 699 F. Supp. 3d 1173, 1183 (M.D. Ala. 2023) (quoting *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019)). Therefore, where a plaintiff fails to establish that her constitutional rights were violated, the plaintiff's failure to intervene claim pursuant to § 1983 necessarily fails. *See Ortiz*, 918 F.3d at 1312 ("Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed."). Accordingly, since Plaintiff has failed to establish that she suffered an unlawful seizure in violation of the Fourth Amendment, she cannot sustain her failure to intervene claim against Defendants Portillo and Buduen. Consequently, Plaintiff's failure to intervene claim is dismissed.

### B. Florida Law Claims

As for the remaining state law claims of false arrest, false imprisonment, and malicious prosecution, Defendants contend just like the § 1983 claims, they all must be dismissed "given the existence of probable cause for [Plaintiff's] arrest." ECF No. [13] at 13. As outlined above, the videos provided to the Court by Defendants clearly establish that the officers had probable cause to arrest Plaintiff for battery prior to her arrest. Because the Florida law claims of false arrest, false imprisonment, and malicious prosecution are all barred by the existence of probable cause, Plaintiff's state law claims must be dismissed as well. *See Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994); *Thomson McKinnon Sec., Inc. v. Light*, 534 So. 2d 757, 759 (Fla. 3d DCA 1988) ("It is settled law in Florida that an absence of probable cause for the commencement or continuance of an original criminal or civil judicial proceeding is an essential element in an action for malicious prosecution."); *Miller v. City of Jacksonville*, 603 So. 2d 1310, 1312 (Fla. 1st DCA 1992) ("Probable cause is an affirmative defense to a claim of false arrest or false imprisonment.") (citing *Metro. Dade Cnty. v. Norton*, 543 So. 2d 1301 (Fla. 3d DCA), *rev.*

*denied*, 551 So. 2d 462 (Fla. 1989)); *Kimbrel v. Clark*, 385 So. 3d 1124, 1127 (Fla. 1st DCA 2024)

("Because a detention must be unlawful to proceed on this claim, probable cause is a defense to

false imprisonment.").[8]

## IV.  CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [13]**, is **GRANTED**.

2. The Complaint, **ECF No. [1]**, is **DISMISSED.**

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

4. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 30, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[8] "When analyzing a probable cause defense, '[t]he validity of an arrest does not turn on the offense announced by the officer at the time; if there is a valid charge for which a person could have been arrested, probable cause exists.'" *Kimbrel*, 385 So. 3d at 1127 (quoting *Daniel v. Village of Royal Palm Beach*, 889 So. 2d 988, 991 (Fla. 4th DCA 2004)).