UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-22496-BLOOM/Elfenbein

CIARA DORMEUS,

 Plaintiff,

v.

MIAMI-DADE COUNTY *et al.*,

 Defendants.

_____/

## ORDER ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Plaintiff Ciara Dormeus' Motion for Leave to File Amended Complaint ("Motion"). ECF No. [27]. Defendants Miami-Dade County, Luis Vasquez, Bryan Portillo, Pablo Buduen, and Dorain Heyliger (collectively "Defendants") filed a Response in Opposition ("Response"), ECF Nos. [28], to which Plaintiff filed a Reply, ECF No. [31]. For the reasons that follow, the Plaintiff's Motion is denied.

**I. FACTUAL BACKGROUND**

This case arises out of an altercation and arrest that occurred at Silk Press Express beauty salon ("the Salon"). ECF No. [1]. Plaintiff's Original Complaint alleged that while she was disputing charges over the cost of services with the Salon's employees, Renee Peterson, an off-duty police officer, approached Plaintiff and initiated contact with her by physically restraining Plaintiff and pinning her against the wall. Someone in the Salon called 911, and Deputy Dorain Heyliger, Deputy Paublo Buduen, and Deputy Bryan Portillo were called to the scene. After conducting an investigation, the deputies became concerned that they lacked probable cause to arrest Plaintiff. Consequently, Deputy Portillo contacted Lieutenant Luis Vasquez and informed

Vasquez about the investigation and that Renee Peterson was a captain at the Broward Sheriff's Office. Despite the on-scene deputies' concerns about the lack of probable cause, Vasquez instructed Portillo to arrest Plaintiff based on what Renee Peterson had told them. While Heyliger and Buduen initially voiced objections to the instruction, the deputies ultimately arrested Plaintiff for battery despite allegedly lacking probable cause.

As a result, Plaintiff's Original Complaint asserted the following claims against Defendants: (1) False Arrest and False Imprisonment under 42 U.S.C. § 1983 against Defendants Vasquez and Heyliger; (2) Malicious Prosecution under 42 U.S.C. § 1983 against Defendants Vasquez and Heyliger; (3) Failure to Intervene under 42 U.S.C. § 1983 against Defendants Portillo and Buduen; (4) False Arrest under Florida law against Defendant Miami-Dade County; (5) False Imprisonment under Florida law against Defendant Miami-Dade County; and (6) Malicious Prosecution under Florida law against Defendants Vasquez, Heyliger, and Miami-Dade County. *See id.*

Defendants filed a Motion to Dismiss, which the Court granted. *See* ECF Nos. [13], [26]. The Court dismissed Plaintiff's § 1983 claims for false arrest and malicious prosecution, finding that the body-worn camera video provided by Defendants in support of their Motion to Dismiss negated Plaintiff's allegations that there was no probable cause for Plaintiff's arrest for battery.[1] *See* ECF No. [26]. Because Plaintiff's state law claims also required sufficient allegations establishing the lack of probable cause, the Court concluded Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution must be dismissed as well. *See id.* The Court also dismissed Plaintiff's failure to intervene claim, finding that since Plaintiff failed to establish

---

[1] The Court also concluded that Plaintiff's § 1983 malicious prosecution claim failed to state a claim because Plaintiff was not arrested pursuant to legal process. *See* ECF No. [26] at 15 n.7.

2

an unlawful seizure in violation of the Fourth Amendment, or any other underlying constitutional violation, Plaintiff's claim could not survive.

Plaintiff has now filed the instant Motion seeking leave to file an amended complaint. ECF No. [27]. The proposed amended complaint asserts the same six counts as Plaintiff's Original Complaint, and largely the same factual allegations, but has incorporated additional allegations regarding the arresting officers' lack of probable cause and allegations that the arrest affidavit contains material omissions that tainted the magistrate judge's findings at Plaintiff's probable cause hearing. *See* ECF No. [27-1]. The Motion asserts that Plaintiff has cured the pleading deficiencies the Court identified in its prior Order, and justice requires the proposed amendment. *See* ECF No. [27].

Defendants respond that the Motion should be denied because (1) the action has already "been dismissed and terminated, and therefore there is no opportunity to amend," and (2) even if it was procedurally proper to seek leave to amend, amendment would be futile given the officers' body-worn camera footage. *See* ECF No. [28]. The Motion is fully briefed and ripe for review.

## II. LEGAL STANDARD

### A. Leave to Amend

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . .." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15); *see Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (asserting that district courts "have broad discretion in permitting or refusing to grant leave to amend"). However, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or

3

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15); *see Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). Futility is one of the most common reasons to deny leave to amend. When an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court may find that leave to amend the complaint is futile. *Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *Denarii Sys., LLC v. Arab*, No. 12-24239-CIV, 2013 WL 500826, at *6 (S.D. Fla. Feb. 11, 2013) ("With respect to futility of amendment, the case law states that '[i]f . . . it is so clearly established that the [pleader] cannot, with leave to amend, cure the legal defects, leave to amend would be futile[.]"). Stated differently, futility equates with "inadequacy as a matter of law. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999)

**III. DISCUSSION**

    **A. Rule 12(b)(6) Dismissal is Presumed to be With Prejudice**

As a preliminary matter, the Court finds that Defendants are correct that it is procedurally improper for Plaintiff to seek leave to amend at this juncture, given that the Court dismissed her Complaint and closed the case. *See* ECF No. [26]. While Plaintiff contends that the Court dismissed her "Complaint without prejudice," Plaintiff misapprehends the law governing dismissals. As the Eleventh Circuit has explained, a "dismissal for failure to state a claim under Rule 12(b)(6) is a judgment on the merits.'" *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981)). "An

4

adjudication on the merits is, in turn, presumed to operate as a dismissal with prejudice unless the district court specifies otherwise." *Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (finding that "an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'"); 9 Fed. Prac. & Proc. Civ. § 2373 (3d ed.) (noting that "many federal courts have held that a dismissal" under Rule 12(b)(6), which qualifies as an "involuntary dismissal" under the federal rules, "would be a dismissal with prejudice")); *Isaac Hayes Enters., LLC v. Trump*, No. 1:24-CV-3639-TWT, 2025 WL 3231625, at *1 (N.D. Ga. Nov. 19, 2025) ("It is axiomatic that a Rule 12(b)(6) dismissal is an adjudication on the merits, which is presumed to be with prejudice.").[2]

Therefore, because the presumption is that a dismissal under Rule 12(b)(6) is a dismissal with prejudice, the Court need not specify that the dismissal is with prejudice or otherwise provide an explanation for why the dismissal is with prejudice, particularly where Plaintiff did not previously seek leave to amend. *See id.* ("Under the federal procedural rules, the district court need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal."). Consequently, when the Court dismissed the Complaint, it dismissed it with prejudice, thereby foreclosing any subsequent motion for leave to amend. *See Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984) (noting that "after a complaint is dismissed the right to amend under Rule 15(a) terminates" where the court indicates that dismissal of the complaint constitutes dismissal of the

---

[2] Other courts in this circuit have similarly found that where the district court dismisses a complaint and does not indicate it is without prejudice and does not otherwise provide leave to amend, it is presumed to be with prejudice. *See e.g.*, *Destin v. Brooks*, No. 23-21256-CIV, 2023 WL 6340289, at *2 (S.D. Fla. Aug. 15, 2023)

5

action). However, even assuming Plaintiff's request to amend the complaint was procedurally proper, it must still be denied as the proposed amendment would be futile.

### B. Failure to State a Claim

Plaintiff argues her proposed amended complaint cures the previous deficiencies identified by the Court by adding "material facts showing the arresting deputy lacked probable cause and knowingly omitted exculpatory information." ECF No. [27] at 2. Specifically, the "amendment alleges the deputy did not personally believe probable cause existed" and, instead, the deputy relied "solely on a supervisor's directive" to carry out the arrest. *Id.* The proposed amendment also includes "specific factual allegations showing that the arresting deputy intentionally omitted material information from his arrest affidavit—namely that he did not believe there was probable cause[.]" *Id.* at 3. However, as discussed below, none of these additional allegations alter the Court's conclusion that Plaintiff has failed to adequately allege the absence of arguable probable cause necessary to sustain her claims against Defendants.

#### a. False Arrest Claims

Plaintiff's allegations concerning her false arrest claims primarily focus on the arresting officers' belief that they lacked the requisite probable cause to arrest Plaintiff. However, the inquiry as to whether arguable probable cause exists is an objective not a subjective inquiry. *See Von Stein v. Brescher*, 904 F.2d 572, 578-579 (11th Cir. 1990) ("The existence of probable cause to arrest is based on objective standards[,]" as is the question of whether there is qualified immunity); *Andrews v. Marshall*, 845 F. App'x 849, 855 n.3 (11th Cir. 2021) ("subjective intent [of the officer] is not relevant to the arguable probable cause inquiry") (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010)). Therefore, it is irrelevant whether any of the officers subjectively believed there might not be probable cause, so long as a reasonable officer under the circumstances

could have reasonably believed there was probable cause to arrest Plaintiff. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) ("In determining whether arguable probable cause exists, we apply an objective standard, asking whether the officer's actions are objectively reasonable . . . *regardless of the officer's underlying intent or motivation*.") (emphasis added) (internal citations and quotations omitted); *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (explaining that arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable caused existed to arrest.").

As the Court determined in its prior Order, the body-worn camera footage provided by Defendants clearly established that an officer acting reasonably under the circumstances would have had arguable probable cause to arrest Plaintiff after the officer observed Plaintiff aggressively shoving Peterson, as Plaintiff's shove satisfied all the elements of criminal battery under Florida law. *See Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019) ("It doesn't take much to commit battery under Florida law. As the statute's plain text indicates . . . any unwanted 'touch' will suffice.") (quoting Fla. Stat. § 784.03(1)(a)). While the officers' investigation of the scene, witness affidavits, or even additional videos of the event might have indicated that Plaintiff was simply acting in self-defense when she shoved Peterson, none of the facts alleged negates that the on-scene officers observed Plaintiff committing what appeared to be a battery. As such, none of the additional facts undermines that arguable probable cause existed for Plaintiff's arrest.

Plaintiff seeks to have the Court's arguable probable cause inquiry focus on what officers allegedly learned about Peterson's conduct leading up to Plaintiff's shove. However, as the Court already explained, a valid claim of self-defense or other justification does not negate arguable probable cause, nor does it matter that the arrestee's conduct was ultimately not a crime that led to

7

a conviction. *See* ECF No. [26] at 13-14 (citing *Davis v. City of Apopka*, 78 F.4th 1326, 1345 n.4 (11th Cir. 2023) ("A claim of self-defense does not establish innocence, and it does not negate probable cause."). An officer's observation of the *prima facie* elements of a crime is more than enough to establish arguable probable cause to make an arrest, even where a plaintiff has provided the officers with an innocent explanation for the criminal conduct. *See Davis*, 78 F.4th at 1336 (noting that "evidence of every element of a crime is not required for a showing of probable cause" and an arrestee's plausible innocent explanation for an arrest does not vitiate probable cause).[3] Accordingly, the Court need not consider Plaintiff's contention that Peterson instigated the altercation, was the first aggressor the officers observed, or otherwise acted violently prior to the deputies arriving on the scene. *See id.* (quoting *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to [accept or further] investigate an arrestee's protestations of innocence generally does not vitiate probable cause.")); *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018) (noting that an "innocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect").

Plaintiff nevertheless insists that her amended complaint should be allowed because her new allegations and the BWC videos establish that Peterson was the first aggressor. However, the fact that a third party might have been the first aggressor does not undermine the finding of arguable probable cause. For instance, in *Richmond v. Badia*, the Eleventh Circuit concluded there was arguable probable cause to arrest the plaintiff for battery where the arresting officer was informed by two employees that the plaintiff and his mother had been in a "physical

---

[3] *See also Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018) ("[I]t is now settled law that there is probable cause for a warrantless custodial arrest even for a seemingly insignificant crime.").

8

confrontation." 47 F.4th 1172, 1181 (11th Cir. 2022). The court did not consider who initiated the fight or that the plaintiff's mother might have instigated the altercation. Instead, the fact that there was credible evidence the plaintiff was in a physical confrontation was enough for the Eleventh Circuit to conclude there was arguable probable cause to arrest the plaintiff for battery. The same is true here. Regardless of whether Peterson instigated the confrontation, the fact that Plaintiff responded by intentionally touching or striking Peterson against her will was enough to establish arguable probable cause for simple battery. *See Wolk v. Seminole Ctny.*, 276 F. App'x 898, 900 (11th Cir. 2008) ("In Florida, a battery occurs when a 'person actually and intentionally touches or strikes another person against the will of the other.'") (quoting Fla. Stat. § 784.03(1)(a)(1)).[4]

In addition to offering the amended pleading, Plaintiff also seeks to have the Court effectively reconsider its decision to review the body-worn camera (BWC) videos submitted by Defendants at the pleadings stage. Plaintiff argues that consideration of such evidence is improper because "Defendants did not provide the Court with videos from all the deputies," and the "BWC videos also do not show the incident that Peterson claimed to have occurred," which the officers relied upon when they arrested Plaintiff. *Id.* at 2.

As for the argument that consideration of the BWC videos is improper at the motion to dismiss stage because the videos are incomplete, that argument is improper, as Plaintiff simply seeks to rehash arguments she already made in response to Defendants' Motion to Dismiss. *See Burger King Corp. v. Ashland Equities, Inc.*,181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) ("A 'motion for reconsideration should not be used as a vehicle to . . . reiterate arguments previously made.'") (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)); *see* ECF No. [17] at 4 (addressing same argument).

---

[4] "[A]ny intentional touching, no matter how slight, is sufficient to constitute a simple battery." *State v. Hearns*, 961 So. 2d 211, 218-19 (Fla. 2007).

In any event, the Court finds no basis to alter its prior decision to consider the BWC videos. As previously determined, "the body-camera footage need not be 'complete' in the sense that it captures all the events leading up to arrest so long as the videos show the authentic, unedited footage of the event underlying the plaintiff's claims." ECF No. [26] at 12 (*citing Swinford v. Santos*, 121 F. 4th 179, 188 (11th Cir. 2024); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024)). No additional videos would be capable of rebutting the fact that Plaintiff aggressively shoved Peterson prior to being arrested, and therefore any additional videos could not undermine the finding that there was arguable probable cause for Plaintiff's arrest.

Furthermore, despite Plaintiff's insistence to the contrary, it is also not relevant for Plaintiff's false arrest claims that the BWC footage appears to show a different battery crime than the one Plaintiff was charged with at the time of her arrest. Indeed, "[o]fficers need not have actual probable cause to make an arrest, and an arrest may be for a different crime from the one for which probable cause actually exists." *Wilkerson v. Seymour*, 736 F.3d 974, 978-79 (11th Cir. 2013) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1089 & n. 6 (11th Cir. 2003)). All that is required is that arguable probable cause to arrest exists for some offense before an officer may assert qualified immunity from suit. *Id.*; *see also Andrews*, 845 F. App'x at 853 ("The existence of arguable probable cause for any arrestable offense provides qualified immunity") (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (holding that an arrest is constitutionally valid as long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, even if probable cause was lacking as to the announced charges). Therefore, even if the officers who arrested Plaintiff did not have probable cause for the specific criminal offense she was arrested for, Defendants are still entitled to qualified immunity as to Plaintiff's false arrest claims based on the potential battery that the officers on the scene personally observed.

### b. Malicious Prosecution Claims

While the "any crime rule" does not apply to malicious prosecutions claims, *see William v. Aguirre*, 965 F.3d 1147, 1160 (11th Cir. 2020), the fact that the BWC videos do not show the battery Plaintiff was purportedly arrested for does not alter the Court's conclusion that the malicious prosecution claims in the proposed amended complaint is not viable. Plaintiff's § 1983 malicious prosecution claim still fails because Plaintiff was not arrested or otherwise unlawfully detained pursuant to legal process without probable cause. *See Gervin v Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025) (explaining that a plaintiff must establish that the seizure was pursuant to legal process in order to establish a § 1983 malicious prosecution claim); *Willimas*, 965 F.3d at 1158 (explaining that a warrantless arrest is an arrest without legal process); *see also* ECF No. [26] at 15.

Here, Plaintiff was arrested without a warrant. Therefore, her initial detention was not pursuant to legal process and may not serve as a basis for Plaintiff's § 1983 malicious prosecution claim. *Willimas*, 965 F.3d at 1158. Plaintiff insists, however, that her amended § 1983 malicious prosecution claim does not rely on her initial arrest as the basis for her constitutional deprivation; rather, Plaintiff relies on Deputy Heyliger's arrest affidavit that the magistrate judge relied upon at Plaintiff's probable cause hearing when the judge denied pretrial release and ordered Plaintiff's "continued detention." ECF No. [27-1] at ¶ 40.

By alleging that the relevant seizure was her pre-trial detention following the probable cause hearing, Plaintiff's amended § 1983 malicious prosecution claim plausibly establishes that she was detained pursuant to legal process. *See Aguirre*, 158 F.4th at 1301.[5] Plaintiff has also

---

[5] In *Aguirre*, the Eleventh Circuit explained that, for a § 1983 malicious prosecution claim, "a Fourth Amendment violation occurs when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." 158 F.4th at 1301.

11

potentially set forth a valid Fourth Amendment violation if she can establish that her probable cause hearing was tainted by the fabrication or omission of material evidence such that there was no probable cause to support her continued detention. *See Gervin*, 139 F.4th at 1262 ("Officers 'cannot intentionally or recklessly make material misstatements or omission in later testimony [or arrest affidavits] to continue detention.'") (internal citations omitted);[6] *Washington v. Howard*, 25 F.4th 891, 907 (11th Cir. 2022) (noting that a "wrongful [pretrial] detention . . . unsupported by probable cause" is "constitutionally unreasonable" because the Fourth Amendment "guarantee[s] a fair and reliable determination of probable cause as a condition for any significant pretrial restraint."); *Williams*, 965 at 1168-69 ("[W]e have concluded that 'the law is clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit in order to detain a citizen . . . if such false statements were necessary to the probable cause.").

However, simply alleging that an officer made materially false statements or omissions in an arrest affidavit is not enough to plausibly allege a Fourth Amendment violation. A plaintiff must provide allegations establishing that, but for the false statement or omission, the magistrate judge would not have found probable cause. *See Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019) (explaining that at the motion to dismiss stage, while the court had to accept the facts alleged as true, it was required to determine "whether the affidavits still would have established probable cause . . . if they had included the omitted information that they knew about").

In the proposed amended complaint, Plaintiff alleges that Deputy Heyliger "omitted material information from his arrest affidavit," which Heyliger knew the magistrate judge would

---

[6] The district court in *Gervin v. Florence* noted the Fourth Amendment prohibition against providing false or misleading statements or testimony to continue detention applies to testimony or evidence offered at proceedings such as an "arraignment, indictment, or bond hearing." 667 F. Supp. 3d 1325, 1339-40 (M.D. Ga. 2023).

12

rely upon at the probable cause hearing to decide whether Plaintiff should remain in detention. Plaintiff further alleges that Heyliger knew no probable cause existed for Plaintiff's continued detention, yet he submitted the arrest affidavit with the material omissions anyway. Plaintiff contends the critical omissions from the arrest affidavit were Deputy Heyliger's objections to the arrest, "his belief that he did not have probable cause to arrest [Plaintiff]," and that the deputies merely followed their supervisor's directive to arrest Plaintiff, as opposed to their own findings. ECF No. [27-1] at ¶ 38. Plaintiff insists that this omitted information was "material and necessary for the magistrate judge's probable cause determination." *Id.* Based on those new allegations, the Court must determine whether Plaintiff has plausibly established that, but for the omissions by Deputy Heyliger, the magistrate judge would not have found probable cause to detain Plaintiff for an additional five days after the probable cause hearing. *See Paez*, 915 F.3d at 1287.

The Court finds that the omissions from Deputy Heyliger's arrest affidavit were either not material or did not undermine the magistrate judge's finding of probable cause.[7] Heyliger's arrest affidavit stated that Peterson told the deputies that Plaintiff "was acting belligerent, disorderly, and erratic inside the business" and that "[Plaintiff] was recording inside of the business." ECF No. [27-1] at 32. Peterson also stated that she informed Plaintiff she was a "law enforcement captain and asked [Plaintiff] not to record her," but Plaintiff continued recording and "pushed" Peterson. *Id.* Plaintiff's shove purportedly caused Peterson to push Plaintiff "against a wall in the business until [the] Miami Dade Police Department arrived." *Id.* Plaintiff does not allege that any of those

---

[7] In *Llauro v. Tony,* 470 F. Supp. 3d 1300, 1312 (S.D. Fla. 2020), the district court made clear that conclusory allegations stating that the affidavit contained false or misleading statements or "contained material omissions, misstatements, and lies;' and [ ] 'omitted exculpatory evidence'" are too broad, and fail to assist courts in determining whether a plaintiff has plausibly alleged that a probable cause finding has been tainted.

13

statements in the arrest affidavit were intentionally false or misleading.[8] Plaintiff also does not assert that Peterson's statements fail to establish probable cause, nor could she. Indeed, in *Richmond v. Badia*, the Eleventh Circuit found statements from two witnesses that the arrestee was engaged in a physical confrontation was sufficient to establish arguable probable cause for battery. *See* 47 F.4th at 1181. Similarly, in *Huebner v. Bradshaw*, the Eleventh Circuit concluded that a statement from the victim that the arrestee "had 'pulled her hair' and 'punched her in the face,'" provided the arresting officer "everything he needed" to conclude there was probable cause to arrest the individual for simple battery. 935 F.3d at 1188.

Therefore, Peterson's statement that Plaintiff "pushed her" without provocation is sufficient to establish arguable probable cause for the battery charge that is the subject of Plaintiff's malicious prosecution claims. Accordingly, Plaintiff bears the burden of pleading specific facts "to indicate that the magistrate's finding of probable cause was unsupported." *Sebastian v. Maynard*, No. 5:10-CV-221, 2011 WL 5120401, at *2 (M.D. Ga. Sept. 9, 2011), *report and recommendation adopted*, No. 5:10-CV-221, 2011 WL 5150420 (M.D. Ga. Oct. 27, 2011).

Plaintiff alleges that if the magistrate judge had an opportunity to consider the fact that Heyliger did not personally believe there was probable cause to arrest Plaintiff and that the officers were simply following their supervisor's directive to make an arrest, the magistrate judge would not have found probable cause for Plaintiff's continued detention. The Court disagrees.

First, the probable cause inquiry is an objective one, and Heyliger's personal thoughts about whether or not there was probable cause plays no role in the magistrate judge's analysis. *See Von Stein*, 904 F.2d at 578-579 ("The existence of probable cause to arrest is based on objective standards[,]" as is the question of whether there is qualified immunity); *Grider*, 618 F.3d at 1257

---

[8] Because Plaintiff has attached Heyliger's arrest affidavit to the proposed amended complaint, the Court considers the statements therein as part of the pleadings.

("The standard [for arguable probable cause] is an objective one and does not include an inquiry into the officer's subjective intent or beliefs."); *Andrews*, 845 F. App'x at 855 n.3 ("subjective intent [of the officers] is not relevant to the arguable probable cause inquiry"). The purpose of an arrest affidavit following a warrantless arrest is to provide the magistrate judge with the factual basis for the arrest. Therefore, Heyliger's failure to incorporate his subjective beliefs about the investigation was unnecessary. As such, Plaintiff fails to plausibly establish that had Heyliger included the fact that he did not personally believe there was probable cause for the arrest, then the magistrate judge would have altered the probable cause determination at the hearing.

The Court also finds that Plaintiff has not plausibly established that, had Heyliger included that the on-scene deputies arrested Plaintiff based solely on the directive from their supervisor, Luis Vasquez, it would have altered the magistrate judge's probable cause finding. As the proposed amended complaint alleges, when Portillo called Vasquez to seek advice on how to proceed, Portillo provided Vasquez with "Deputy Heyliger's conclusions and the information gathered from the investigation." ECF No. [27-1] at ¶ 23. Accordingly, Vasquez had the same information as the three deputies who were on the scene. Vasquez was aware of Peterson's statements to the deputies that Plaintiff had pushed her. Therefore, since Peterson's statements were enough to establish probable cause for an arrest, the fact that Vasquez told the officers on the scene to arrest Plaintiff based on those statements would not undermine or otherwise negate the magistrate judge's finding of probable cause. As such, the fact that Vasquez ordered the arrest was an immaterial omission that did not need to be included in the arrest affidavit. Accordingly, because the alleged omissions in Heyliger's arrest affidavit were not material and were not capable of undermining the magistrate judge's finding of probable cause, Plaintiff's continued pre-trial detention does not establish a plausible Fourth Amendment violation or the absence of probable cause necessary to state a claim

for malicious prosecution under either § 1983 or Florida law. As such, Plaintiff's proposed amended complaint would be futile.[9]

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Leave to File Amended Complaint, **ECF No. [27]**, is **DENIED**.

2. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 25, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[9] As the Court explained in its prior Order, ECF No. [26] at 15-16, Plaintiff's § 1983 Failure to Intervene claim requires that Plaintiff establish an underlying constitutional violation. *See Ford v. Smitherman*, 699 F. Supp. 3d 1173, 1183 (M.D. Ala. 2023) (quoting *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019)). Because Plaintiff is unable to establish a Fourth Amendment violation in Counts I and II of the proposed amended complaint, and Plaintiff does not allege she suffered any other constitutional deprivation, her § 1983 Failure to Intervene claim fails as well. *See Ortiz*, 918 F.3d at 1312.